IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SAMUEL MAYHAN, | : |
| Plaintiff, | : Case No. _____ |
| v. | : |
| GENERAL MILLS OPERATIONS, LLC, | : |
| Defendant. | : |

# COMPLAINT

Plaintiff is seeking leave to amend the complaint to add a Title VII claim in separate class action litigation in which he is a named plaintiff and which is pending in this Court, Case No. 1:24-cv-02409-MLB-JKK. (*See* Docs. 20 & 20-1.) To preserve all rights related to his Title VII race discrimination claims, Plaintiff files this Complaint.

## JURISDICTION AND VENUE

1.

Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343(4), which confers original jurisdiction upon this Court in a civil action to recover damages or to secure equitable or other relief under any Act of Congress providing for the protections of civil rights, and pursuant to 28 U.S.C. § 1331, which confers original

jurisdiction upon this Court in a civil action arising under the Constitution or laws of the United States.

2.

Plaintiff asserts claims under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e *et seq.* ("Title VII").

3.

Pursuant to 28 U.S.C. § 1391(b), § 1391(c), and N.D. Ga. L.R. 3.1, the Atlanta Division of this Court is the proper venue for Plaintiff's claims because Defendant is subject to this Court's personal jurisdiction, 28 U.S.C. § 1391(c)(2), and a substantial part of the events or omissions giving rise to the claim occurred within the Atlanta Division of this Court.  *See also* N.D. Ga. L.R. 3.1(B)(1)(a) and 3.1(B)(3).

## PARTIES

4.

Plaintiff is a Black male and a former employee of Defendant who worked at General Mills' manufacturing facility in Covington, Georgia, until he was terminated in May 2024.

5.

Plaintiff is a citizen of the United States and resident of the State of Georgia; he submits himself to the jurisdiction of this Court.

6.

General Mills Operations, LLC ("Defendant" or "General Mills"), is a Delaware limited liability company with its principal place of business in Minneapolis, Minnesota, and was properly served by personal service of process upon its registered agent, National Registered Agents, Inc., 289 S. Culver Street, Lawrenceville, Georgia 30046.

## ADMINISTRATIVE PROCEEDINGS

7.

Defendant is a covered employer under Title VII.

8.

Plaintiff timely filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC").

9.

The EEOC issued Plaintiff a Notice of the Right to Sue against Defendant, and this lawsuit was timely filed thereafter.

10.

Plaintiff made a good faith effort to comply with EEOC regulations and applicable law and to provide all relevant, specific information available.

11.

All conditions precedent to jurisdiction under Title VII have been satisfied.

12.

All administrative prerequisites for filing suit on Plaintiff's claims have been satisfied.

13.

This suit is timely, appropriate, and valid in all respects.

## STATEMENT OF FACTS

14.

In or around 2022, Mayhan, was a TTL at the Covington location and was given a "does not meet expectation" by Joe Powers, his white Process Lead supervisor. Prior to that, Mark Salerno blocked all of Mayhan's attempts to advance.

15.

After Powers' departure, Mayhan worked even harder even though he performed equal to or better than his peers. Nevertheless, Cantrell, Powers' interim replacement before the Process Lead position was filled, just copied and pasted the same evaluation that Powers had given to Mayhan. Mayhan talked to

Cantrell about this, asked why this was just a copy and paste job, and even asked how he could improve. Cantrell was unable to articulate to Mayhan how to succeed in his TTL role and simply changed the review to "meets."

16.

A white male, Matt Hartley, was then chosen by Cantrell to be Mayhan's Platform Lead supervisor.

17.

In or around late Winter 2024 / early Spring, Mayhan, per white HR Manager Chris Morrison's previous directions about such conduct, told a white technician, Darren McDermott, to go home after he refused to work. McDermott complained to Hartley, who took McDermott's side and allowed him to ignore Mayhan's instructions. Mayhan again was vocal about this conduct. Shortly after this, Cantrell began talking to Mayhan condescendingly. Hartley and Cantrell failed to give him support as a TTL and continually blamed him for situations and circumstances that were not his fault.

18.

On or about March 15, 2024, after Hartley became Mayhan's Platform Lead, Mayhan's Project Manager instructed him to go to West Plant after it was announced over the radio that the West Plant had a fire on the roof. Mayhan

5

followed the instructions and went into the West Plant. While there, he was confronted by a white employee about why he was in the building. Apparently, that white employee complained about Mayhan, who was later questioned by Dan Lasota and Hartley. He was put on "Final Term" for this situation.

19.

At that time, Cantrell was overrunning the production line and metal shards started being detected in the cereal processing by metal detectors that are designed to catch and prevent such shards from being allowed into the cereal product sold to the ultimate General Mills consumer. But, when such things happen, production slows down and General Mills makes less money.

20.

On at least one such occasion, Mayhan was informed of these metal findings and followed all procedures related thereto. Per General Mills procedures, he verified the findings, and began a system shut down. But Will Coady, a white Good Ole Boys Process Lead, in an effort to keep producing despite the safety concerns, overrode Mayhan and tried another option against policies and procedures. But more metal findings were found, and he ultimately had to stop production.

21.

Cantrell had removed a metal detector such that, on at least one occasion, metal shards were in product, and the missing metal detector made it much more difficult or impossible to properly identify the source of the metal. In part because of issues with the metal detectors, a metal audit puck that is designed to assure that the detectors are working properly went missing.

22.

Mayhan was disciplined and fired for allegedly lying about who he informed about the missing metal audit puck, even though he followed all policies and procedures related thereto. Mayhan did not engage in the conduct for which he was terminated.

23.

Upon information and belief, Cantrell and Hartley did not trust Mayhan because he was vocal about the lack of support and guidance as well as his insistence on following policies and procedures. As a result, they ensured that Mayhan was terminated in May 2024 for lying, which he did not do, and for conduct that did not violate any policy or procedure and that was not insubordinate.

24.

At all junctures, Mayhan reported to his white supervisors of the safety risks that he was seeing and that they should follow the correct procedures to fix the safety issues in play. As the Black employee who had been vocal about and to the very white supervisors who were at fault, it made sense to Cantrell and Hartley to terminate Mayhan. This is one example of General Mills' pattern and practice of blaming and terminating Black employees for false charges but does not do the same to white employees.

## COUNT ONE

Title VII: Disparate Treatment/Discrimination

25.

Plaintiff repeats and realleges each and every allegation above as it set forth herein in full.

26.

Plaintiff is a member of a class protected by Title VII.

27.

Defendant is a covered employer under Title VII.

28.

Plaintiff was qualified for the job that he was performing at the time he was terminated.

29.

Plaintiff suffered an adverse employment action despite being qualified for his position.

30.

Plaintiff was treated less favorably than similarly situated employees outside of his protected class, including Jim Alexander.

31.

Plaintiff's race was a motivating factor for the adverse employment actions taken against him.

32.

Plaintiff asserts a disparate treatment claim pursuant to Title VII.

33.

Plaintiff is entitled to Title VII damages pursuant to, among other statutes, 42 U.S.C. § 2000e-5.

## COUNT TWO

Title VII: Retaliation

34.

Plaintiff repeats and realleges each and every allegation above as it set forth herein in full.

35.

Plaintiff is a member of a class protected by Title VII.

36.

Defendant is a covered employer under Title VII.

37.

Plaintiff engaged in a protected activity when he stated to Cantrell and Hartley that he would not tolerate being talked to condescendingly and when he voiced issues to Hartley about his decisions as platform lead.

38.

In retaliation for Plaintiff's protected activity, Defendant took materially adverse actions against him, including disciplining him, terminating him, creating a hostile work environment that would have dissuaded a reasonable worker from making complaints of discrimination and harassment, and taking disparate adverse actions against him.

39.

Plaintiff's protected activity under Title VII was a motivating factor for the adverse employment action taken against them.

40.

Plaintiff asserts a retaliation claim pursuant to Title VII.

41.

Plaintiff is entitled to Title VII damages pursuant to, among other statutes, 42 U.S.C. § 2000e-5.

## **COUNT THREE**

Title VII:  Hostile Work Environment

42.

Plaintiff repeats and realleges each and every allegation above as it set forth herein in full.

43.

Plaintiff was discriminated against, harassed, not supported, and held to a different moving-target standard as a result of his race by General Mills' supervisors and subordinates.

44.

The discriminatory statements, threats, and conduct were unwelcome, sufficiently severe or pervasive, detrimentally affected Plaintiff, were viewed as subjectively hostile and abusive by Plaintiff, and would be viewed as objectively hostile and abusive to a reasonable person.

45.

General Mills had actual or constructive knowledge of the ongoing discrimination and/or the harassing conduct was undertaken by and/or condoned by General Mills employees in management roles.

46.

Defendant failed to take prompt and appropriate remedial action to prevent or correct further discrimination and harassment of Plaintiff.

47.

Plaintiff asserts a hostile work environment claim pursuant to Title VII.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a TRIAL BY JURY and the following relief:

(a) Declaratory judgment that the systemic pattern and practice of racially hostile and discriminatory employment practices that, over 30 years, made advancement at the Covington facility futile and

caused catastrophic harm to Plaintiff's career in violation of his Title VII rights;

(b) Temporary and permanent injunctive relief, along with this Court's oversight for a reasonable duration, disbanding the Good Ole Boys, holding racist decisionmakers accountable, and implementing lawful employment practices that give Black employees the full benefit of employment at General Mills;

(c) Reinstatement of Plaintiff;

(d) Full amount of financial losses caused to Plaintiff as a result of the racist employment practices at the Covington facility;

(e) Compensatory damages in an amount to be determined by the enlightened conscience of the jury for Plaintiff's emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, and special damages;

(f) Award of costs and expenses of this action, together with reasonable attorney and expert fees;

(g) Punitive damages in an amount to be determined by the enlightened conscience of the jury sufficient to punish Defendant for its conduct

  toward Plaintiff and deter Defendant from similar conduct in the future;

(h)  Judgment against Defendant for damages incurred by Plaintiff;

(i)  Judgment against Defendant in an amount to fully and adequately compensate Plaintiff;

(j)  An award of pre-judgment and post-judgment interest;

(k)  A trial by jury on all issues triable to a jury; and

(l)  Other and further relief as the Court deems just and proper.

Respectfully submitted this 29th day of December 2024.

        By:  /s/ Douglas H. Dean
           Georgia Bar No. 130988
           Attorney for Plaintiff
           Dean Thaxton, LLC
           601 E. 14th Avenue (31015)
           Post Office Box 5005
           Cordele, Georgia 31010
           T: (229) 271-9323
           F: (229) 271-9324
           E: *doug@deanthaxton.law*

*Signatures continued on following page.*

By: <u>/s/ Linda G. Carpenter</u>
Georgia Bar No. 111285
Attorney for Plaintiff
The Brosnahan Law Firm
31 Lenox Pointe, NE
Atlanta, GA 30324
T: (404) 853-8964
F: (678) 904-6391
E: *lgc@brosnahan-law.com*